**WEST STREET–ERIE BOULEVARD CORPORATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 66 Civ. 36.

United States District Court
N. D. New York.

June 25, 1968.

Mackenzie, Smith, Lewis, Michell & Hughes, Syracuse, N.Y., for plaintiff (George Sullivan, Jay Wason and Neal P. McCurn, Syracuse, of counsel).

Mitchell Rogovin, Asst. Atty. Gen., Washington, D.C., and Justin J. Mahoney, U. S. Atty., Albany, N.Y., for defendant (Donald R. Anderson and Mark S. Rothman, Washington, D. C., of counsel).

## OPINION

RYAN, District Judge.

Plaintiff, WEST STREET-ERIE BOULEVARD CORPORATION, timely filed this suit to recover a deficiency income tax assessment and interest thereon, paid by plaintiff under protest

following Internal Revenue Service audit of plaintiff's corporate income tax return for the taxable period April 1, 1961 to December 22, 1961.[1]

The Internal Revenue Service audit accepted as correct the ordinary taxable income as reported, showing an operating loss of $14,430.94, but included as taxable income subject to income tax a net capital gain of $343,560.51, which was "realized as a result of condemnation proceedings by the State of New York" involving a parcel of realty located in Syracuse, New York. The deficiency assessment of $85,890.13 which followed this audit, was paid and is sought to be recovered in this suit.

Plaintiff had reported these transactions but had claimed that this long-term capital gain was not includable in taxable income to the corporate plaintiff because a complete liquidation was effected by the plaintiff under the provisions of Section 337 of the Internal Revenue Code of 1954.[2]

Plaintiff's return disclosed that all information returns had been duly filed by plaintiff with the District Director of Internal Revenue as required by Regulation Section 1.337–6 and Section 6043 of the Internal Revenue Code of 1954.[3]

The question presented is whether under the facts of this case, plaintiff is entitled to the benefit of Section 337. I have concluded that it is and award plaintiff judgment in an amount to be computed by the Court after further hearing, unless the parties stipulate to the amount.

At a post trial hearing held to afford an opportunity to counsel for argument, the following facts and record dates appeared undisputed.

Plaintiff, a New York realty holding corporation, was organized in 1947. It owned the fee to one parcel of real estate located at Erie Boulevard and West Street, Syracuse, New York. This was known as the Bartell-property. In addition, it held a one-third beneficial in-

---

1. This suit comes on for trial before me by assignment of Chief Judge Foley, during the period of my designation by Chief Judge Lumbard to sit in the Northern District of New York.

The evidence had been fully submitted, after trial, to the Court before our late beloved colleague, Senior Judge Stephen W. Brennan, and was before him for decision at the time of his death.

The parties have by filed written stipulation agreed that this action may be determined and disposed of by me on the trial transcript, exhibits and briefs already filed and that further evidence and oral argument may be presented if I deem it necessary after review of the file. I have not deemed it necessary to receive further evidence and oral argument has been heard by me.

2. Internal Revenue Code of 1954: SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.

(a) General Rule.—If—

(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the

corporation are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

\* \* \* \* \*

(26 U.S.C.1964 ed., Sec. 337.)

Treasury Regulations on Income Tax (1954 Code):

Sec. 1.337–1 *General.*

\* \* \* The 12-month period shall begin on the date of adoption of the plan determined as provided in paragraph (b) of § 1.337–2 and no extension of such period can be granted. \* \* \* (26 CFR, Sec. 1.337–1.)

3. Internal Revenue Code of 1954. § 6043. Return regarding corporate dissolution or liquidation.

Every corporation shall—

(1) Within 30 days after the adoption by the corporation of a resolution or plan for the dissolution of the corporation or for the liquidation of the whole or any part of its capital stock, make a return setting forth the terms of such resolution or plan and such other information as the Secretary or his delegate shall by forms or regulations prescribe; \* \* \*.

terest in an adjoining parcel known as the Forsythe property, record title to which was in the Hawley Court Corporation.

For some time prior to January, 1960, it had been general knowledge that the State of New York was considering acquiring, either by condemnation or negotiated acquisition, both of these properties for arterial highway purposes.[4]

The following historical dates are not in dispute:

January 7, 1960—Corporation adopts resolution for dissolution and liquidation under Section 337.

January 28, 1960—Treasury Form 966 filed with Internal Revenue Service notifying Government of corporation's plan of liquidation.

December 1, 1960—The appropriation map with regard to the Forsythe property was filed by the State of New York.

Dec. 27, 1960—Corporate action revoking resolution of January 7, 1960 and adopting new resolution for dissolution and liquidation under Section 337. It is the legal effect of this resolution which is in issue in this suit. The Government contends it was simply an attempt to further extend the one-year—Section 337—period; the plaintiff contends it was a complete abandonment of the January 7, 1960 resolution and effected the adoption of a new plan of dissolution and liquidation.

June 21, 1961 Appropriation map with regard to Bartell property was filed by the State.

Dec. 22, 1961 Compensation for taking of Bartell property agreed upon.

Dec. 22, 1961 Plaintiff completed liquidation and distribution of assets.

On January 7, 1960, the stockholders of the plaintiff corporation adopted a resolution providing for the liquidation of its assets and distribution among the shareholders. Because of the importance of this resolution in this suit, I set it forth at length.

"WHEREAS, it has come to the attention of the stockholders that real property representing their chief asset is to be taken by condemnation,

"Now, therefore, on motion duly made, seconded and unanimously carried, it is

"RESOLVED, that the Board of Directors of West Street and Erie Boulevard Corporation be and they hereby are authorized to take such action as may be necessary for the dissolution of said corporation and distribution of its assets."

Following this meeting, plaintiff on January 28, 1960, filed Form 966 (which was dated January 14, 1960) as provided for by Section 6043 of Internal

---

4. The last amendment prior to 1960 to the New York Highway Law, McKinney's Consol.Laws, c. 25, Section 349–e, providing for state arterial highways in the City of Syracuse, was enacted by the Legislature as Chapter 856, Laws of New York, and became a law on April 19, 1956. This enactment extended the power of the Superintendent of Highways to act under Section 349–d and related sections and to take title to property which might be found necessary for the construction of the highway. It was in the exercise of this authority that the Superintendent determined when and if the taking of plaintiff's realty holdings was required.

No state law specified any specific date for the taking of the property found by the Superintendent to be necessary for the highway construction.

Proceedings for acquisition by the State of New York to acquire title to real property are provided for in the Condemnation Law, McKinney's Consol.Laws, c. 73, of the Consolidated Laws of New York. Title to the realty to be condemned does not pass to the State until formal judicial proceedings have been instituted and a notice of the taking and appropriation map have been filed by the State with the County Clerk of the county where the realty is situated. There must be no uncertainty in the description of the property taken; it must be shown in metes and bounds on the map of appropriation.

Revenue Code of 1954, to which a copy of the resolution of January 7, 1960 was attached.

The prompt taking of plaintiff's holdings by the State as plaintiff had anticipated did not occur and plaintiff continued to conduct its regular business. As months went by, no definite step was taken by the State until December 1, 1960 when it filed an appropriation map of the Forsythe property, thereby acquiring fee title to that property. It was this property which was held in fee by the Hawley Court Corporation, in which plaintiff held a one-third beneficial interest.

Compensation for this parcel was made in August, 1961. It is not involved in this suit.

It was then manifest to plaintiff that the anticipated taking by the State of the Bartell property, contrary to expectation, would be delayed beyond the time limitation required by the January 7, 1960 resolution so as to permit plaintiff to claim the benefits of Section 337.

Plaintiff had taken no action under the resolution of January 7, 1960 to effect its dissolution, liquidation and distribution of its assets to its stockholders.

Another meeting of the stockholders of plaintiff was then held on December 27, 1960 and the following resolution was adopted:

"Whereas on motion of the stockholders of this corporation at a meeting held January 7, 1960 it was

"RESOLVED that the Board of Directors of West Street and Erie Boulevard Corporation be and they hereby are authorized to take such action as may be necessary for the dissolution of said corporation and distribution of its assets." And

"Whereas the anticipated taking of its property in condemnation by the State of New York has not as yet been effected, however the taking by the State of New York is imminent. And

"Whereas the taking by the State at this time will not allow ample time within the year from January 7, 1960 to effect complete liquidation and distribution of its assets.

"Now, therefore, on motion duly made, seconded and unanimously carried, a majority of the stockholders being present, it is

"RESOLVED, that the action taken by stockholders at their meeting on January 7, 1960 be and it hereby is revoked, and

"On Motion duly made, seconded and unanimously carried, it is

"FURTHER RESOLVED, that the directors take such action as may be necessary to present a petition for the complete dissolution of West Street and Erie Boulevard Corporation, sell its properties, collect together its assets, to provide for and pay its obligations and to distribute the remaining assets of the corporation to its stockholders in complete redemption of their stock."

Plaintiff on January 6, 1961, filed a new Form 966 attaching a copy of the resolution of December 27, 1960. This printed government-supplied form contains Question "7", under which plaintiff stated a Form 966 had previously been filed by it on January 27, 1960.

It was not until June 21, 1961 that the State filed the appropriation map with regard to the Bartell property, which plaintiff held in fee.

Plaintiff completed the liquidation of the corporation and distribution of its assets to the stockholders on December 22, 1961. Tax returns were filed by the plaintiff, disclosing this action. The returns showed no profit to the plaintiff on this sale and the distributee or transferee stockholders reported their share of the profit as taxable income upon their individual tax returns.

The pertinent portion of the Regulation involved provides "The 12-month period shall begin on the date of adoption of the plan * * * and no extension of such period can be granted." Code of Federal Regulations 26—Section

1.337–1. The construction and application of Section 337 and of the Regulation are the problem presented.

Although both parties state that this is a case of first impression and that no judicial decision has considered the question here presented, we do find a number of pertinent areas as to which there is no dispute. Thus, "defendant does not contend that there could never be a rescission of a plan of liquidation and a subsequent adoption of a new plan which would qualify under Section 337;" and with this, plaintiff agrees. So, too, in so far as local law is concerned, the parties agree that once having resolved to dissolve, plaintiff could revoke the resolution so long as a certificate of dissolution had not been filed with and accepted by the Secretary of State. But the defendant argues that there was no rescission here of the earlier plan because all the facts which prompted the plan of liquidation on January 7, 1960, existed at the time the plan was allegedly rescinded and because the new plan was identical to the old one; that this was not a case where the "original deal was off" and the corporation resumed business as usual but that, on the contrary, the original deal was on because the State of New York had at the time of the alleged rescission already taken one parcel; and that the simultaneous "rescission" and "adoption" is indicative of plaintiff's true purpose—an extension of the 12-month period—because it was clear that additional time was required under the old plan. I find the narrow issue to be whether, under the facts here present, there was a valid rescission and abandonment of the first proposed liquidation and the valid adoption of a new plan, or whether the later corporate resolution merely resulted in an extension of the original plan. As to this, it has been held that

> "It is for the trial court, upon consideration of an entire transaction, to determine the factual category in which a particular transaction belongs." United States v. Cumberland Public Service Co., 338 U.S. 451, at 456, 70 S.Ct. 280, at 282, 94 L.Ed. 251.

I accept the test to be applied as set forth in Revenue Ruling (Rev.Rul. 67–273, 1967—35 Int.Rev.Bull. 8), to wit:

> "Whether a plan of liquidation has been abandoned and a new plan entered into or whether in substance a single plan merely has been extended depends upon the facts and circumstances in each case."

It is important to note that applying this test to the specific case then considered, the ruling continued:

> "Here, the plan of liquidation was formally rescinded, the corporation continued its normal business operations without curtailment throughout the year 1965, no sales of corporate properties were made, and no distributions were made to its shareholders. The continuation of the business as a going concern demonstrates that any subsequent liquidation would be conditioned on some later action of the board of directors and the shareholders. The adoption by the shareholders of the resolution to rescind the first plan was effective, since the shareholders then manifested an intention to abandon that plan."

Whether there was any definite plan of dissolution in January, 1960, and if there was whether such a plan was abandoned, can best be found in the intent and purpose of the corporation, which is revealed in the corporate acts as performed by its officers, directors and stockholders. This has brought me to consider the depositions received in evidence.

I accept and credit the uncontradicted deposition testimony of William J. Haller, a New York Certified Public Accountant, in evidence as an exhibit. He was the Treasurer and Secretary of plaintiff corporation from its incorporation in 1947 until its dissolution. He also attended to the corporate bookkeeping.

I find that Haller was present at the meeting of January 7, 1960 when the

first resolution to dissolve the corporation was passed. It had then become generally known that the State was contemplating taking the property for highway purposes. The stockholders had concluded that there would be no purpose to continue the corporate business after the State taking. Haller, as an accountant, was aware of and alert to the 12-month dissolution and liquidation provision of Section 337 of the Internal Revenue Code.

Prior to this meeting of January 7, 1960, he had discussed with the other officers and stockholders the problems that might be arising from the State's taking the property and "the tax consequences".

Haller testified to the circumstances under which the meeting of January 7, 1960 was held, as follows:

" * * *. Since the corporation was going to lose the building, probably, or the land, [that] there wasn't any intent on the part of the stockholders, apparently, to continue this type of business, and the only thing to do would be to take advantage of the 12-month dissolution and take necessary steps in that direction."

I find the situation to have been truthfully described by Haller in his testimony:

"Well, as we approached the end of 1960, we found that the State having taken no action whatsoever, our plans were rather on the wrong track, and we did discuss it with the stockholders and had a meeting in December of 1960, we were directed to and decided to revoke the action taken at the January meeting for dissolution, and then, of course, the hope was still alive * * * and, truly, yet at that time, we still believed the State was going to take this property. Nobody had any concrete evidence they were going to, but we didn't want to continue the protection of something that appeared to be imminent; and so we did decide to and passed a resolution at that

meeting, based on the assumption that the State was going to take the property, probably, in 1961." (Deposition of William J. Haller, pp. 39, 40.)

A second meeting was held on December 27, 1960. It was not until June 21, 1961 that the State filed its taking or appropriation map, the filing of which vested title to the Bartell property in the State. It was not until December 22, 1961, that the plaintiff and the State, to avoid judicial proceedings for fixation of value payable by the State for the taking, reached an agreed figure as just compensation.

Although there had long been general talk that the State would take title to all of the property in the line of the proposed highway, the evidence is clear (1) that there was no obligation or absolute commitment on the part of the State to do so; (2) that the route of the proposed highway could be changed to exclude plaintiff's property; (3) that an obligation on the State only arose when it filed an official map showing the taking and appropriation of the property and vesting title in the State; and (4) that there were instances "where the State changed their courses from time to time, and so the total, actual taking was never a certainty."

And, indeed, it appears that in the taking map filed by the State on June 21, 1961, there was a small piece of the "Bartell" property "on the east side of Onondaga Creek, facing or near Erie Boulevard, and upon which there was a smoke stack" which was omitted from the taking. This parcel of property not taken was later conveyed by plaintiff in the dissolution distribution to its stockholders. This is important as demonstrating the absence of any prior agreement on the part of the State to take all or any part of plaintiff's property.

The failure of the State to take title during 1960 brought about the revocation and abandonment of any plan contemplated by the resolution of January 7, 1960. There was a mortgage of $60,-

000.00 on the plaintiff's property; it was required on the taking by the State to be satisfied, either by direct award to the mortgagor or by prepayment by plaintiff. The plaintiff's corporate Directors' Minutes of October 16, 1961, later record adoption of a resolution authorizing the borrowing of $60,000 from the First Trust Company to pay off this existing mortgage. There was no such resolution passed following the January 7, 1960 meeting. Since this was the principal asset of the corporation, it is plain that no plan of distribution could be spelt out until there was, in fact, a taking by the State which would provide a definite fund for payment of corporate obligations and the balance for distribution among the stockholders. One has to know that there is a fund to be distributed before one can plan its apportionment or allocation.

Although plaintiff's attorney (Walter T. Gieselman, pp. 56–57) testified that, as to the new plan of December 27, 1960 and the old plan of January 7, 1960 "I would say, probably, it was substantially the same", there were definite differences which both he and Haller pointed out, and these differences occasioned the complete abandonment of dissolution under the resolution of January 7, 1960.

I conclude that it lay within the legal power of the plaintiff to revoke the dissolution resolution of January 7, 1960 and to pass a new resolution on December 27, 1960 just so long as it had not filed a certificate of dissolution with the New York Secretary of State. I also conclude that by so acting plaintiff effected a complete rescission and abandonment of the January 7, 1960 resolution and the plaintiff did not lose its right to the claim under the provisions of Section 337 of the Internal Revenue Code of 1954 by reason of its sale of the Bartell property.

Appropriate judgment, carrying out the above conclusions, shall be submitted promptly and if agreement is not reached as to computations, a hearing shall be promptly noticed before me. So ordered.